**UNITED STATES DISTRICT COURT**
**NORTHERN DISTRICT OF OHIO**
**EASTERN DIVISION**


| | | |
|---|---|---|
| **Eunice Freeman,** | ) | **CASE NO.1:11 CV 1754** |
| | ) | |
| **Plaintiff,** | ) | **JUDGE PATRICIA A. GAUGHAN** |
| | ) | |
| **vs.** | ) | |
| | ) | |
| **Shaker Heights City School District,** | ) | **Memorandum of Opinion and Order** |
| | ) | |
| **Defendant.** | ) | |


**Introduction**

This matter is before the Court upon Defendant Shaker Heights City School District

Board of Education's Motion for Summary Judgment (Doc. 32).  This case alleges race

discrimination for failure to promote. For the following reasons, the motion is GRANTED.

**Facts**

Plaintiff Eunice Freeman originally filed her Complaint against defendant Shaker

Heights City School District (sometimes referred to as the Board or District) in a *pro se*

capacity[1] alleging race discrimination, gender discrimination, and retaliation.  Upon initial

---

[1]    Plaintiff has since retained an attorney.

1

screening, this Court dismissed plaintiff's race and gender discrimination claims.  It later

granted defendant's motion to dismiss the retaliation claim.  On appeal, the United States

Court of Appeals for the Sixth Circuit determined that it was error to dismiss the race

discrimination claim based on a 2009 failure to promote, but upheld dismissal of the gender

discrimination and retaliation claims.  Accordingly, the sole matter before this Court is the

race discrimination claim based on defendant's failure to promote plaintiff to the position of

Cafeteria Manager[2] in 2009.  *Freeman v. Shaker Heights City School District,* No. 12-3270

(6th Cir. Nov. 26, 2012).  The claim is brought pursuant to Title VII and the Ohio Civil Rights

Act.

       Gena Cerasuolo, defendant's Personnel Administrative Assistant, avers the

following. Plaintiff, an African American female, was employed by defendant from the 1992-

1993 school year to the 2009-2010 school year.  She was initially hired as a Substitute

Cafeteria Worker in August 1992 and was promoted to Cook's Helper in January 1993.  In

March 1997, she was promoted to Head Cook.  For the entire time plaintiff was employed by

defendant in the Food Service Department, Cindy Gorfido was plaintiff's supervisor.  Plaintiff

also filled certain custodial positions over the years.

       Defendant posted the position of Cafeteria Manager on May 4, 2009. The bidding

closed on May 8, 2009. Five District employees, including plaintiff, submitted bids for

the position. Thirty-nine external applicants also applied for the position. The Cafeteria

Manager position posted on May 4, 2009, required that a candidate be a high school

---

[2]       The Sixth Circuit refers to the position as Kitchen Manager, but the parties agree
        that the position was entitled Cafeteria Manager.

2

graduate or equivalent, understand the principles of food preparation, check the quality of food produced, have the ability to instruct and train workers in food preparation, ensure sanitary standards are maintained, and handle clerical functions including reports and inventories.  (Gena Cerasuolo aff.)

Dr. Robert Kreiner, defendant's Business Administrator avers the following.  He was involved with the promotion and hiring recommendations for the Food Service Department. Plaintiff was not interviewed for the May 2009 Cafeteria Manager position or promoted because, as an initial matter, she lacked the minimum qualification of a high school diploma. Additionally, over the years and particularly during the 2008-2009 school year, she had exhibited some concerning performance, disciplinary, and attendance issues. Plaintiff did not follow directions well from supervisors, and often chose to employ her own methods and procedures despite being told otherwise by supervisors. She repeatedly failed to follow procedures for safe food preparation, inventory management, dress code, and food ordering. Such insubordination was concerning to District administrators, and is not the type of behavior that District administrators believed warranted a promotion to a supervisory role. Further, the April 2009 incident, discussed immediately below, involving unsafe chicken resulted in a five day suspension, and the Board seriously considered terminating plaintiff's employment at that time based upon the gravity of the situation. Thereafter, the Board did not believe that plaintiff was a good candidate for a promotion to the supervisory role of Cafeteria Manager which was posted five days later. Defendant cannot recommend promoting employees to supervisory roles who are unable to properly perform the responsibilities of their current job. But even if plaintiff had exhibited satisfactory performance and shown that

3

she had management qualities, defendant would not have considered her for the promotion to Cafeteria Manager in May 2009 because she lacked the minimum educational qualifications.

Two disciplinary incidents, which Kreiner and Gorfido coordinated and investigated, took place in March and April of 2009.  In March 2009, the middle school was short on tuna. Plaintiff's supervisor told her to send any extra tuna the elementary school had to the middle school, provided plaintiff ensured there was sufficient tuna for the elementary school lunches. Plaintiff did not follow her supervisor's directions and ran short of tuna, thereby failing to perform the essential job duty of her position as Head Cook of ensuring sufficient inventory and  disobeying her supervisor's instructions. Plaintiff's supervisor then told her to make chicken salad.  Plaintiff improperly thawed the chicken and then improperly prepared the chicken salad from hot cooked chicken, sending hot sandwiches to the school that should be refrigerated. In April 2009, plaintiff improperly prepared chicken a second time for the elementary school by thawing it in the oven which is not a safe or correct procedure and resulted in the chicken being at an unsafe temperature. Based upon this incident, plaintiff was suspended for five days from April 23, 2009 to April 29, 2009.  (Robert Kreiner aff.)

Plaintiff's personnel file also included several instances of discipline.  In February 2006, plaintiff's supervisor issued a memorandum stating that plaintiff disregarded an instruction to not serve overripe bananas in bag lunches.  In September 2008, plaintiff's supervisor issued a written warning to plaintiff for failure to wear her uniform while working. In February 2009, plaintiff received a verbal and written warning for accruing five attendance/punctuality occurrences.  (Kreiner aff. Tab 2) Although during her employment plaintiff generally received satisfactory evaluations, her May 2009 evaluation received an

4

"unsatisfactory" rating in four categories, "improvement needed" in six categories, "good" in four categories, "very good" in one category, and "excellent" in one category. (*Id.*)

Kreiner did not recommend plaintiff to be promoted to the position of Cafeteria Manager based upon a review of her entire personnel file including her evaluations and disciplinary history.  (Kreiner aff.)

Kreiner  made the recommendation to the Board to promote Faith Vanderpool (who is white) to the position of Cafeteria Manager, effective June 15, 2009. (*Id.*) Vanderpool had worked in the Food Service Department since January 2008.  (Cerasuolo aff.)  Kreiner considered Vanderpool to be the best candidate for the promotion based upon her interview and a review of her evaluations and references. Vanderpool had extensive experience in both public and private food service, and had strong evaluations while working in the District. She also had superb references that supported her ability to serve in a supervisory role. (Kreiner aff.)  Vanderpool had certified on her application when she first applied for employment with defendant that she had a high school diploma. (Cerasuolo aff.)

Vanderpool's May 2009 evaluation shows that she received four "good" ratings and twelve "very good" ratings.  (Kreiner aff. Tab 1)

Kreiner also avers that during his tenure, defendant's administrators did not waive minimum educational requirements as written in job descriptions for positions in the Food Service Department, and consistently implemented and adhered to the requirements. For the Cafeteria Manager position posted in May 2009, defendant did not believe it was appropriate to waive minimum educational requirements or substitute years of experience for required credentials. Accordingly, it did not waive the diploma requirements for plaintiff or for any

other candidate. Because it did not substitute years of experience or other qualifications for educational credentials, defendant chose not to "grandfather" plaintiff or any other candidate into this position.  Further, defendant does not have a policy or practice of independently verifying educational credentials or statements as reported by employees on employment applications.  Defendant had no information or belief that Vanderpool lacked a high school diploma or otherwise lied on her employment application.[3]  (Kreiner aff.)

Plaintiff submits her own affidavit which states the following. In February 2006, she was blamed for filling condiment containers at the high school, although it was not one of her responsibilities as Interim Kitchen Manager.  The responsibility was that of the Head Cashier who was white and not blamed for failing to fill the containers.  Also in February 2006, plaintiff was disciplined for disobeying her supervisor's directive regarding serving overripe bananas.  However, when plaintiff had discovered the problem with the bananas she began removing them from the bags and told her staff to do the same.  But someone continued to put the bananas into the lunch bags and plaintiff was blamed for the incident.  In March 2009, plaintiff was blamed for sending tuna to the middle school and serving hot chicken to students at the elementary school. But, from the time the chicken left the kitchen until it had been served, at least an hour had passed and the chicken would have been cooled by the time it was served.  In April 2009, plaintiff was accused of improperly preparing pre-cooked chicken by thawing it in the steamer.  She was blamed for the incident although Vanderpool wrote a letter

---

[3]     Verification by defendant following the filing of the lawsuit revealed that Vanderpool did receive a high school diploma.  (Sarah Kuscher aff., Tab 1 and 2) Plaintiff complains that defendant has not submitted an official copy of Vanderpool's original diploma but only a photocopy.  The Court finds no basis to require such.

explaining what actually occurred. The Health Inspector was present at the time, checked the temperature of the chicken, and reported that "your kitchen is being maintained in a satisfactory manner." Plaintiff was accused of serving raw chicken to children at the middle school, but defendant only uses pre-cooked chicken.  Additionally, she was Head Cook at the elementary school and not the middle school. In March 2001, plaintiff was accused of falsifying a back injury although she was injured, was told by her supervisor to go home, and had never asked for workers compensation for the injury.  (pltf. aff.)

Defendant contracted out its Food Service Department beginning in the 2010-2011 school year, abolishing all Food Service positions. Plaintiff was laid off effective August 19, 2009. (Kreiner aff.)

This matter is now before the Court upon defendant's Motion for Summary Judgment.

**<u>Standard of Review</u>**

Summary Judgment is appropriate when no genuine issues of material fact exist and the moving party is entitled to judgment as a matter of law.  *Celotex Corp. v. Catrett*, 477 U.S. 317, 322-23 (1986) (citing Fed. R. Civ. P. 56(c)); *see also LaPointe v. UAW, Local 600*, 8 F.3d 376, 378 (6th Cir. 1993).  The burden of showing the absence of any such genuine issues of material facts rests with the moving party:

> [A] party seeking summary judgment always bears the initial responsibility of informing the district court of the basis for its motion, and identifying those portions of "the pleadings, depositions, answers to interrogatories, and admissions on file, together with affidavits," if any, which it believes demonstrates the absence of a genuine issue of material fact.

*Celotex*, 477 U.S. at 323 (citing Fed. R. Civ. P. 56(c)).  A fact is "material only if its resolution will affect the outcome of the lawsuit." *Anderson v. Liberty Lobby*, 477 U.S. 242,

248 (1986). Accordingly, the nonmoving party must present "significant probative evidence" to demonstrate that "there is [more than] some metaphysical doubt as to the material facts." *Moore v. Philip Morris Cos., Inc.*, 8 F.3d 335, 340 (6th Cir.1993).  The nonmoving party may not simply rely on its pleading, but must "produce evidence that results in a conflict of material fact to be solved by a jury." *Cox v. Kentucky Dep't. of Transp.*, 53 F.3d 146, 150 (6th Cir. 1995).

The evidence, all facts, and any inferences that may permissibly be drawn from the facts must be viewed in the light most favorable to the nonmoving party. *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 587 (1986); *Eastman Kodak Co. v. Image Technical Servs., Inc.*, 504 U.S. 451, 456 (1992). However, "[t]he mere existence of a scintilla of evidence in support of the plaintiff's position will be insufficient; there must be evidence on which the jury could reasonably find for the plaintiff." *Anderson*, 477 U.S. at 252.

Summary judgment should be granted if a party who bears the burden of proof at trial does not establish an essential element of his case.  *Tolton v. American Biodyne, Inc.*, 48 F.3d 937, 941 (6th Cir. 1995) (citing *Celotex*, 477 U.S. at 322).  Moreover, if the evidence is "merely colorable" and not "significantly probative," the court may decide the legal issue and grant summary judgment.  *Anderson*, 477 U.S. at 249-50 (citation omitted).

**Discussion**

**(1) Timeliness of Plaintiff's EEOC Charge**

To pursue her Title VII claim, plaintiff had to file her EEOC charge within 300 days from the date of the alleged discrimination.  *Russell v. Ohio,* 302 Fed.Appx. 386 (6th Cir. 2008).  Plaintiff filed her EEOC charge on June 16, 2010.  She asserted that race

discrimination took place on August 21, 2009 when she applied for the position of Cafeteria

Manager in May 2009, was not interviewed, and a white female with less experience was

chosen.  (Doc. 39 Ex. 13)

   For the charge to have been timely, the discriminatory act must have occurred on or

after August 20, 2009, i.e., 300 days from June 16, 2010.  But, even plaintiff's charge

acknowledges that she applied for the position in May 2009 and was not interviewed.

Defendants state that the position was posted on May 4, 2009, defendants immediately

decided not to interview plaintiff, and Vanderpool was promoted on June 15, 2009.  As such,

under the most liberal view, the failure to promote took place on June 15, 2009.  Thus, the

discriminatory act did not take place within the 300 days, regardless of plaintiff's

identification of August 21, 2009 as the date the discrimination took place.  The charge was

untimely.  Plaintiff appears to assert that her claim may proceed under Ohio's statute.[4]  But,

plaintiff filed her charge concurrently with the EEOC and the Ohio Civil Rights Commission

(OCRC). Under 42 U.S.C. § 2000e-5(e)(1), plaintiff had the lengthier 300 days to file her

charge if she also initiated proceedings with the state agency, the OCRC, which she did.

Therefore, plaintiff concurrently filed her charges and failed to meet the statute of limitations

---

[4]   Ohio courts use the same analysis employed by the federal courts for Title VII
claims when analyzing discrimination claims brought under the Ohio Civil Rights
Act. *Jones v. Butler Metropolitan Housing Authority*, 40 Fed.Appx. 131 (6th Cir.
2002) (citing *Plumbers & Steamfitters Joint Apprenticeship Comm. v. Ohio Civil
Rights Comm'n*, 66 Ohio St.2d 192 (1981).

and the Court lacks jurisdiction.[5]

Assuming the Court has jurisdiction, it proceeds to an analysis of plaintiff's claim.

**(2) Race Discrimination**

The law regarding race discrimination arising out of a failure to promote is well-

established:

> To establish a prima facie case of racial discrimination on a failure to promote claim,
> [plaintiff] must establish that: "(1) he is a member of a protected class; (2) he applied
> and was qualified for a promotion; (3) he was considered for and denied the
> promotion; and (4) other employees of similar qualifications who were not members
> of the protected class received promotions." *Dews v. A.B. Dick Co.*, 231 F.3d 1016,
> 1020–21 (6th Cir.2000). If [plaintiff] establishes a prima facie case, he is entitled to a
> presumption of discrimination unless [defendant] proffers "a legitimate,
> nondiscriminatory reason for its decision." *Id*. at 1021. The burden then shifts back to
> [plaintiff] to show that [defendant's] "proffered reason is pretextual." *Id.* (citing
> *McDonnell Douglas Corp. v. Green*, 411 U.S. 792, 802–04, 93 S.Ct. 1817, 36 L.Ed.2d
> 668 (1973) and *St. Mary's Honor Ctr. v. Hicks*, 509 U.S. 502, 510–11, 113 S.Ct. 2742,
> 125 L.Ed.2d 407 (1993)).

*Nicholson v. City of Clarksville, Tenn*., --- Fed.Appx. ----, 2013 WL 3746098 (6th Cir. 2013).

**(a) prima facie case**

Defendant argues that plaintiff fails to establish a prima facie case because she cannot

show that she was qualified for the promotion to Cafeteria Manager, the second prong, or that

Vanderpool was similarly qualified, the fourth prong.

As to whether plaintiff was qualified for the position, the Court looks to whether

plaintiff has established that she met defendant's objective qualification for Cafeteria

---

[5]  Plaintiff also seems to assert that her charge is timely because the denial of the
promotion was part of a continuing pattern of conduct.  But, the charge only
identifies one discriminatory act, i.e., the May 2009 failure to promote.

10

Manager.[6]  *Wilson v. Ford Motor Co.,* 513 Fed.Appx. 585 (6th Cir. 2013)(citing *Upshaw v.*

*Ford Motor Co.,* 576 F.3d 576 (6th Cir. 2009) (The inquiry focuses on the objective criteria.)

Defendant maintains that it is undisputed that the May 2009 Cafeteria Manager position

required a high school diploma and that plaintiff lacked such a diploma and had not earned a

GED.

 Gena Cerasuolo, defendant's Personnel Administrative Assistant who was responsible

for posting all new District classified positions and promotions, avers that the Cafeteria

Manager position posted in May 2009 required that a candidate be a high school graduate or

equivalent. (Cerasuolo aff.)  Dr. Kreiner, the Business Administrator, avers that plaintiff was

not interviewed or promoted to the position because, as an initial matter, she lacked the

minimum qualification of a high school diploma.  (Kreiner aff.)

 Plaintiff asserts,

> Although Plaintiff did not have a high school diploma, she was well qualified for the
> position as she served as Head Cook for nineteen years which included forty-three
> months as interim Kitchen Manager. Further, the high school diploma requirement
> was a pretext as Defendant never verified the existence of the high school diploma for
> the employee who was promoted to Cafeteria Manager and had only two years of
> experience as a Head Cashier.

(Doc. 39 at 5).

 Plaintiff is impermissibly attempting to replace her own idea of what constitutes the

minimum qualifications for the position for defendant's by asserting that her experience

should be substituted for that of a high school diploma.   "It is inappropriate for the judiciary

---

[6] Because the Court looks to the objective qualifications for the position, the Court
will address plaintiff's argument that defendant fabricated her disciplinary
problems in anticipation of her applying for the position in the discussion of
pretext.

to substitute its judgment for that of management. "  *Smith v. Leggett Wire Co.*, 220 F.3d 752,

763 (6th Cir.2000)).  Further, plaintiff is improperly asking the Court to bypass this prima

facie element and look at pretext.  *Osadciw v. Ganley Chrysler Jeep*, 2010 WL 3767590

(N.D.Ohio Sept. 24, 2010) (citing *Wexler v. White's Fine Furniture. Inc*., 317 F.3d 564, 574

(6th Cir.2003)) ("A court may not consider the employer's alleged nondiscriminatory reason

for taking an adverse employment action when analyzing the prima facie case.")

Kreiner avers that the District did not waive minimum educational requirements as

written in job descriptions in the Food Service Department.  Furthermore, Cerasuolo avers

that when Vanderpool first applied for employment with the District, she certified on her

application that she had a high school diploma.  Kreiner avers that the Board did not have a

policy or practice of independently verifying educational credentials as reported by

employees, or statements certified by employees on their employment applications.  Because

defendant had no information or belief that Vanderpool lacked a high school diploma, there

was no reason to verify.  This testimony is undisputed and, therefore, plaintiff fails to show

she was qualified for the position.

With regard to the fourth prong, defendant asserts that Vanderpool was objectively

qualified, unlike plaintiff, because she possessed a high school diploma.  Based on the

discussion above, it is undisputed that Vanderpool had this minimum qualification while

plaintiff did not and they were not similarly qualified.

Plaintiff maintains that she was more qualified than Vanderpool because she had 19

years' experience as Head Cook, while Vanderpool only had two years' experience as a Head

Cashier.  Again, the Court will not second guess the District which, as discussed further

12

below found Vanderpool to be more qualified.  *See Hawkins v. Memphis Light Gas and Water*, 2013 WL 1149738 (6th Cir. 2013) (citing *Hedrick v. W. Reserve Care Sys.*, 355 F.3d 444, 462 (6th Cir.2004)) (Plaintiff argued that he was "plainly the superior candidate based on a comparison of... qualifications. In conducting a comparison of the candidates' qualifications, we do not substitute our judgment for that of management. Instead, we simply compare characteristics such as differences in job title, responsibilities, experience, and work record.)

For these reasons, plaintiff does not satisfy the prima facie case and defendant is entitled to summary judgment.  But, even assuming she does, plaintiff fails to show pretext.

### (b) pretext

Defendant asserts that Vanderpool was selected because she was the best candidate based on her interview, her evaluations and references, and the fact that she had extensive experience in both public and private food service.  (Kreiner aff.)  Plaintiff, on the other hand, lacked the minimum qualification and had disciplinary and attendance issues in the previous year.  (*Id.*)

Plaintiff contends that defendant's asserted reasons are pretextual because the disciplinary issues were fabricated.[7]  For the following reasons, plaintiff has failed to show a genuine issue of material fact as to pretext.

Plaintiff avers that in February 2006 she was blamed for failing to fill a sour cream

---

[7]      Plaintiff also asserts that defendant intentionally harmed her reputation, and exhibited a pattern of discrimination over time. The Court agrees with defendant that plaintiff may not raise these new claims which were not included in her EEOC charge. Furthermore, the Court agrees and incorporates defendants' assertions that plaintiff's claims are unsupported and the disparate impact claim in particular fails because plaintiff did not allege a facially neutral policy having an unintended adverse impact on the protected class.

container although it was the responsibility of the head cashier who was white and not blamed for the incident.  But plaintiff relies on her own affidavit testimony and fails to show any supporting documents.  Moreover, this was not a disciplinary matter cited by Kreiner in support of his statement that plaintiff lacked management qualities.

Plaintiff avers that she was disciplined for placing overripe bananas into lunch bags although plaintiff had instructed her staff not to put the bananas in the bags but someone, not plaintiff, had done so anyway. Again, plaintiff is relying on her own self-serving affidavit. Notwithstanding, the Court is not in a position to second-guess defendant who held plaintiff responsible even if the actions were taken by her staff.

Similarly, plaintiff avers that she was given a written warning for failing to wear her uniform although she explained that she had only removed her apron to use the restroom. Again, plaintiff fails to support her version of the incident with admissible evidence of record, and she improperly speculates in her brief as to the state of mind of her supervisor (could she have been "wait[ing] outside the restroom knowing that plaintiff would have naturally removed her apron when going to the restroom...").  Additionally, plaintiff points out that her evaluations for the years 2002 through 2007 showed that she received ratings of "good" and "excellent" for wearing her uniform, and only received an "improvement needed" in her 2009 evaluation.  She received a "very good" rating the following year.  Plaintiff's speculation that she was disciplined in September 2008 for failing to wear her uniform in order to build a disciplinary file to be used as a basis for denying her a promotion in May 2009 is mere conjecture.

Likewise, plaintiff points out that she received "good," "very good," and "excellent"

ratings for attendance and punctuality in her 2004-2007 evaluations, while only receiving an "unsatisfactory" rating for attendance in the 2008-2009 school year and that punctuality remained "excellent" that year.  The following year, after being denied the promotion, plaintiff received a "very good" for attendance.  Plaintiff appears to be attempting to show that defendant built up disciplinary actions in her file prior to the May 2009 promotion.  But, plaintiff recognizes that the position was not posted until May 2009.  Plaintiff does not present any evidence or argue that defendant knew the position would be posted and took action against plaintiff in anticipation of a vacancy in the position.  Moreover, it is undisputed that plaintiff had the same supervisor for the entire time that she was employed in the Food Service Department and that plaintiff had generally performed her job in a satisfactory manner and was rated as such.  The Sixth Circuit has noted that where a plaintiff has the same supervisor over the years whose scrutiny seems to suddenly increase and result in negative criticism, an inference of racial discrimination is not permitted.  *Hopkins v. Canton City Bd. Of Educ.,* 477 Fed.Appx. 349 (6th Cir. 2012).

Next, plaintiff avers that the hot chicken had cooled by the time it reached the children at the elementary school and so she should not have been disciplined for serving hot chicken. Plaintiff's opinion as to the food safety is insufficient to undermine the District's food safety rules.  Plaintiff also states that Vanderpool wrote a letter explaining what actually occurred and apologizing for "not double checking to see if the chicken had been pulled for the next day." (Doc. 39 at 9)  However, plaintiff does not submit the letter and, therefore, it is not evidence contained in the record.  Plaintiff submits an April 16, 2009 inspection report which states, "Your kitchen is being maintained in a satisfactory manner."  Aside from the fact that

15

this document is unauthenticated,[8] there is no indication that the report had anything to do with the incident or occurred at the same time.  Furthermore, plaintiff states that the inspector had checked the temperature of the chicken before making this report. But, there is absolutely no basis for this statement.

Plaintiff contends that she was suspended for improperly thawing chicken or even serving raw chicken even though the District only orders pre-cooked chicken. There is no evidence that plaintiff was disciplined for serving raw chicken.  In fact, defendant submits a second affidavit of Robert Kreiner stating that plaintiff was not involved with any incident involving raw chicken and was not disciplined for that. (Doc. 41 Ex. 1) Additionally, plaintiff asserts that while she was accused of serving the unsafe chicken at the middle school, she was assigned to the elementary school at the time. Yet, Kreiner's April 23, 2009 letter of suspension stated that plaintiff placed *elementary* students in harm's way. (Kreiner aff. Tab 2 at 301)

In sum, plaintiff has not shown that defendant fabricated her disciplinary incidents in order to deny her the promotion.  Moreover, plaintiff fails to show, or even state, that the incidents were based on racial animus.

Plaintiff makes additional arguments to support her position on pretext.

Plaintiff asserts that while defendant states that it is not its policy to verify an applicant's statements, plaintiff signed an authorization for release of information in 1992 when she first applied for employment which stated that defendant "may want to verify the

---

[8]     This document, and many others, is the subject of defendant's separate motion seeking to exclude the documents. (Doc. 40)

statements I have made in this application."  (Doc. 39 Ex. 11) Plaintiff asserts that such a form was not required of Vanderpool when she applied for the Cafeteria Manager position. Plaintiff's assertion is incorrect as demonstrated by the evidence submitted by defendant. (Kushner decl. Ex. 1)

Plaintiff also attempts to create an issue of fact by arguing that a black female applicant should have been promoted instead of Vanderpool because that applicant was more qualified.  But, plaintiff cites to no admissible evidence to support her statements and, even if she did, that applicant has not alleged discrimination here.  Moreover, Kreiner submits a second affidavit explaining why the defendant determined that this applicant was not a strong candidate for the position.  (Doc. 41 Ex. 1)

Plaintiff states that 10 months after Vanderpool was hired in 2008, she was promoted from Cook's Helper to Head Cashier although other black employees, some more qualified, applied. Plaintiff surmises that as Head Cook and Head Cashier were the only positions directly beneath Cafeteria Manager and "in line for the job," defendant "slid" Vanderpool into the Head Cashier position in order to ensure that she received the promotion in May 2009. Plaintiff's supposition cannot form the basis of pretext.

Plaintiff submits evidence showing that she had earned, as recently as 2007, certification in topics directly related to her job. Even assuming these documents were authenticated, plaintiff cannot show that the defendant was required to consider these certificates even though plaintiff had also received discipline.  Additionally, Kreiner avers that the District "did not place particular weight on the fact that Food Service employees earned certain certifications or continuing education credits, particularly because

17

certifications must be earned by all Food Service employees and the District funded the costs of such certifications." (Doc. 41 Ex. 1)

Plaintiff makes much of her seniority, but Kreiner similarly avers that "District administrators did not place additional weight on a candidate's seniority as compared to other legitimate factors.  In fact, the collective bargaining agreement does not permit District administrators to do so." (*Id.*)

Finally, plaintiff asserts that while she worked as a substitute custodian in the summers of 1993, 1998, 1999, 2000, and 2004, she was denied interviews in May 2010 after applying for custodial positions and white applicants were given the jobs.  This presents no evidence of pretext as to the May 2009 decision.  Furthermore,  plaintiff's EEOC charge only challenges the May 2009 decision and the Sixth Circuit recognized that that decision was the only claim at issue in the case.

For all the foregoing reasons, plaintiff fails to show pretext.

Because plaintiff fails to satisfy her prima facie case or show pretext, summary judgment in defendant's favor is warranted.

**<u>Conclusion</u>**

For the foregoing reasons, Defendant Shaker Heights City School District Board of Education's Motion for Summary Judgment is granted.

IT IS SO ORDERED.

 /s/ Patricia A. Gaughan
PATRICIA A. GAUGHAN
Dated: 10/2/13                     United States District Judge

18